**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. ) | |
| JOLIE JOHNSON and ESTATE OF ) | |
| DEBBIE HELMLY ) | |
|     and ) | |
| STATE OF GEORGIA ex rel. ) | Civil Action No.: 4:16-CV-290 |
| JOLIE JOHNSON and ESTATE OF ) | |
| DEBBIA HELMLY, ) | |
| ) | |
|     Relators, ) | |
| ) | |
| v. ) | |
| ) | |
| BETHANY HOSPICE AND PALLIATIVE ) | |
| CARE OF COASTAL GEORGIA, LLC ) | |
| (f/k/a BETHANY HOSPICE OF COASTAL) | |
| GEORGIA, LLC), BETHANY HOSPICE ) | |
| AND PALLIATIVE CARE, LLC (f/k/a ) | |
| BETHANY HOSPICE, LLC), BETHANY ) | |
| BENEVOLENCE FUND, INC., AVA ) | |
| BEST, JUSTIN HARRELL, M.D., DAVID ) | |
| ARNETT, M.D., STAN SINCLAIR, M.D., ) | |
| RICHARD E. WHEELER, M.D., and ) | |
| BERKLEY M. "MAC" MACKEY, ) | |
| ) | |
|     Defendants. ) | |

---

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants Bethany Hospice and Palliative Care of Coastal Georgia, LLC (f/k/a Bethany

Hospice of Coastal Georgia, LLC), Bethany Hospice and Palliative Care, LLC (f/k/a Bethany

Hospice, LLC), Bethany Benevolence Fund, Inc., Ava Best, Justin Harrell, M.D., David Arnett,

M.D., Stan Sinclair, M.D., Richard E. Wheeler, M.D., and Berkley M. "Mac" Mackey

(collectively, "Defendants"), by and through their undersigned counsel, and pursuant to Federal

Rules of Civil Procedure 9(b) and 12(b)(6), respectfully move this Court to dismiss the First

Amended Complaint ("Amended Complaint") filed by Relators Jolie Johnson and the Estate of Debbie Helmly for the reasons set forth below.

## INTRODUCTION

This action is nothing more than a desperate (and transparent) attempt by Relators to use the litigation process—and this Court—as a tool for exacting revenge against their former employer, Bethany Hospice and Palliative Care of Coastal Georgia, LLC ("Bethany Coastal Georgia"). Aiming to destroy Bethany Coastal Georgia's business and reputation (and, it seems, the reputation of anyone affiliated with it—no matter how loosely), and gain a windfall for themselves, Relators accuse Bethany Coastal Georgia and eight other defendants of perpetrating an extensive scheme to defraud the government. But rather than support such serious allegations with actual facts, Relators come armed only with, at best, conjecture, innuendo and conclusory allegations of law barely disguised as fact. And rather than state particular facts supporting *each* of their claims against *each* of the nine defendants, Relators try to lump all defendants together in shotgun fashion, referring to them, collectively, by the ill-defined moniker "Bethany" throughout their 23-page pleading. In so doing, Relators leave it to the Defendants—and the Court—to guess as to the particular basis for the claims asserted against them. This is precisely what the Federal Rules of Civil Procedure prohibit.

It should go without saying that a party with a solid case does not need to file a shotgun pleading like Relators try to do here. But although Relators' allegations are as baseless as they are scant, even baseless allegations can cause irreparable harm to a defendant's business or reputation. For this reason, Rule 9(b) aims to protect defendants against spurious charges of immoral and fraudulent behavior by requiring plaintiffs to plead fraud with particularity. Relators' reckless allegations against Bethany Coastal Georgia and all other Defendants fall far short of this

requirement.   As discussed more fully below, the Amended Complaint should therefore be dismissed in its entirety.

## FACTUAL BACKGROUND

Defendants disagree with most of the misrepresentations, factual mischaracterizations, and material omissions made by Relators in their Amended Complaint.  But for purposes of this Motion to Dismiss, Defendants recognize that all allegations of material fact in a complaint must be assumed true.  *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010).

This is an action under the federal False Claims Act ("FCA") and the Georgia False Medicaid Claims Act ("GFMCA"), which arises from Jolie Johnson and Debbie Helmly's brief employment at Bethany Hospice and Palliative Care of Coastal Georgia, LLC ("Bethany Coastal Georgia")[1].  (Am. Compl. ¶ 1.)  Bethany Coastal Georgia and its sister company, Bethany Hospice and Palliative Care, LLC ("Bethany Hospice"), are providers of hospice care based in the State of Georgia.  (Am. Compl. ¶ 5.)  According to the Amended Complaint, in December 2014, Johnson and Helmly were hired by "Bethany" as a marketer and the Administrator, respectively.  (Am. Compl. ¶¶ 6-7.)  Ms. Helmly passed away in March 2018, and her Estate brings this action in her place, together with Ms. Johnson (collectively, the "Relators").  (Am. Compl. ¶ 7.)

Relators allege that prior to joining Bethany Coastal Georgia, Johnson and Helmly were employed at another hospice in Claxton, Georgia—Spanish Oaks Hospice.  (Am. Compl. ¶ 9.)  According to the Amended Complaint, throughout the course of their seven months of employment at Bethany Coastal Georgia, Johnson and Helmly were preparing for (or pursuing) another similar False Claims Act case against Spanish Oaks.  (*See* Am. Compl. ¶¶ 11-12, 16, 37.)  Relators allege

---

[1] Relators do not clearly distinguish between any of the related "Bethany" entities named in this suit, alleging only that they "began working for Bethany in December 2014" and then referring, generally, to "Bethany" throughout the remainder of their Amended Complaint.  (Am. Compl. ¶¶6-7.)

that shortly after they left Spanish Oaks and began working for "Bethany," Defendant Ava Best, the President and CEO of Bethany, became aware of Johnson and Helmly's plans to pursue an FCA whistleblower claim against Spanish Oaks and grew paranoid about the presence of whistleblowers in her office.  (Am. Compl. ¶ 16.)  According to Relators' allegations, Ms. Best was open about her dislike of whistleblowers, even going so far as to tell Ms. Helmly "that she did not want 'whistleblowers affiliated with her business'" and "did not want a whistleblower as her Administrator." (*Id.*)

Despite Ms. Best's knowledge of the Spanish Oaks FCA case, and supposed "paranoia" about Johnson and Helmly's whistleblower status, Relators further allege that Ms. Best was nonetheless willing to share with Johnson and Helmly the details of an elaborate kickback scheme she was allegedly pursuing at Bethany for purposes of securing "illicit referrals" in violation of the Federal Anti-Kickback Statute.  (*See* Am. Compl. ¶¶ 22, 24, 34.)  Indeed, Relators specifically allege that "the impetus for this FCA lawsuit is that Ms. Best and [another Defendant, Mac Mackey] determined to grow and maintain their business through kickbacks." (Am. Compl. ¶ 18.)

Relators allege that Ms. Best revealed to Ms. Helmly as early as December 2014 that she devised a scheme to pay kickbacks to referring physicians under the guise of investment income. According to the Amended Complaint, during employment negotiations with Helmly, Ms. Best allegedly told her that "she would follow the same protocol to add compensation for [her] that she used to pay referring doctors for their referrals."  (Am. Compl. ¶ 22.)  As Relators further allege, that final offer for employment "concerned a below market investment for a percentage of the company and huge returns when referrals came pouring in."  (*Id.*)  Of course, nowhere in their Amended Complaint do Relators allege that Ms. Helmly actually received an ownership interest in any Bethany entity upon acceptance of that offer of employment.  Nor do they provide any

particular details regarding the manner in which Ms. Best allegedly perpetrated her supposed kickback scheme.

Instead, throughout their Amended Complaint, Relators merely describe in a general fashion various conversations in which Ms. Best allegedly admitted (by way of example) "that she gives an interest in the company to all of her Medical Directors, and that this interest provides them with 'a large amount of money.'" (Am. Compl. ¶ 24.) This, Relators explain, indicated that "Bethany was giving illegal kickbacks to doctors for referrals." (*Id*.) Relators likewise allege that Ms. Best mentioned "that her Medical Directors were 'part owners' in Bethany Hospice" and that Ms. Johnson, after having investigated this matter, "found that [a former employer of Ms. Best] had a similar payment scheme to pay directors through their retirement rather than directly." (Am. Compl. ¶ 34.) According to Relators, Ms. Best's alleged comments "not only illuminate[d] the scheme employed, but also demonstrate[d] Ms. Best's clear intent to funnel kickbacks through a sham device." (*Id*.) Following Ms. Best's alleged remarks, Relators felt compelled to investigate further and "continue conversations" in an effort to "persuade Ava Best and Mac Mackey to stop their illegal behavior." (*Id*.)

Despite these supposed efforts to investigate further and continue their conversations regarding Ms. Best's alleged kickback scheme, Relators' Amended Complaint is conspicuously short on details regarding the alleged scheme or the "illicit referrals" it allegedly produced. Instead, the Amended Complaint is replete with conclusory allegations that "Bethany was giving illegal kickbacks to doctors for referrals" and that "[t]he doctors would receive payments as inducement for and appreciation for referrals of patients, which constitute kickbacks." (Am. Compl. ¶¶ 24, 25.) Although Relators first claim that Ms. Best actually revealed her kickback scheme to Ms. Helmly during her initial employment negotiations (and Ms. Best was, supposedly,

"already paranoid and concerned about the existence of 'whistleblowers' in her employ"), they later allege that "things turned with Ava Best" only after Helmly and Johnson "pointed out that the kickbacks were illegal and that Ms. Best should know that. . . ." (Am. Compl. ¶ 35.) Shortly thereafter, Relators claim, Ms. Best proceeded to "torture" and "threaten" Ms. Helmly before demoting her "without reason or explanation." (Am. Compl. ¶ 38.) Then, on July 28, 2015,[2] Relators allege that Johnson and Helmly were fired. (Am. Compl. ¶ 39.)

## PROCEDURAL HISTORY

Johnson and Helmly filed this action on November 4, 2016. In their original Complaint, they asserted claims against, not just Bethany Coastal Georgia and related parties, but 41 additional defendants. The original Complaint—and its myriad of claims against the 50 defendants named in it—was premised on the theory that "[t]here is a large hospice problem in Southern Georgia," because "hospice companies have discovered that they can manipulate the system through kickbacks and admitting patients who do not qualify." (ECF No. 1, Compl. ¶ 1.) After a lengthy and thorough investigation, the United States and the State of Georgia declined to intervene in this case on June 6, 2017, and March 12, 2018, respectively. (ECF Nos. 10 and 14.)

On November 1, 2018, Relators filed their Amended Complaint (ECF No. 18), which sought to substitute the Estate of Debbie Helmly as a relator following Ms. Helmly's death, and asserted claims against only their former employer, Bethany Coastal Georgia and other related parties, rather than the dozens of other defendants named in the original Complaint.

Although the allegations in the Amended Complaint focus almost exclusively on the alleged conduct of Ms. Best and statements she supposedly made about her alleged kickback

---

[2] Relators mistakenly allege in Paragraph 39 that they were terminated on "July 28, 2018," but this appears to be a typo. Earlier in their Amended Complaint, Relators allege that they were "terminated July 2015" (Am. Compl. ¶¶ 6-7) and the allegations of preceding paragraphs make clear that the alleged termination occurred in the July 2015 timeframe (*see* Am. Compl. ¶ 37).

scheme, Relators also attempt to assert claims under the FCA and GFMCA against various other defendants, including the Bethany Benevolence Fund, Inc. (identified only by its address), Mac Mackey (an officer and investor in "Bethany" and, allegedly, a willing accomplice to Ms. Best's kickback scheme), and Drs. Justin Harrell, David Arnett, Stan Sinclair, and Richard Wheeler (individual physicians who Relators allege, without any factual support, referred patients to Bethany in exchange for kickbacks or "remuneration").  Rather than assert actual facts in support of their claims against these defendants, Relators include only a few sparse allegations about these defendants in their pleading and then ask the Court to treat all defendants as "alter egos" and lump all defendants together when stating their claims in conclusory fashion.

Defendants now move to dismiss all claims asserted by Relators in their Amended Complaint.  This motion should be granted for the following reasons:

First, the Amended Complaint is an inappropriate shotgun pleading that fails to distinguish between each of the nine defendants, and instead purports to lump all defendants together as one under an unsupported "alter ego" theory.  In so doing, Relators fail to provide any of the Defendants fair notice of the claims asserted against them or their particular factual basis, and for that reason, their allegations fall far short of the applicable pleading requirements under Rule 9(b) of the Federal Rules of Civil Procedure.  The Amended Complaint, including all claims against all Defendants, should be dismissed in its entirety for this reason alone.

Second, Relators' "Presentment" claim under the FCA and GFMCA fails because Relators have not pled with particularity the details of any alleged kickback scheme at "Bethany," and likewise have failed to plead any facts supporting their conclusory assertion that claims were submitted to the government in connection with that alleged kickback scheme.

Third, Relators' "Make or Use" claim fails because they have not pled any facts supporting their assertion that any false statement was made or used by any of the Defendants for purposes of securing any improper payment from the state or federal government, much less pled any with particularity, as required.

Fourth, Relators' "Reverse False Claim" similarly must be dismissed for failure to plead a false statement with particularity, as well as Relators' failure to allege particular facts supporting their claim that any amounts were, in fact, owed to the government at any time.

And finally, Relators' retaliation claim should be dismissed not only because the Amended Complaint is a shotgun pleading unsupported by particular factual allegations (which requires dismissal of all claims against all defendants), but because the Relators have not supported—and cannot support—a retaliation claim against anyone other than their employer.

For these reasons, as discussed more fully below, Relators' Amended Complaint should be dismissed.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state a claim that is plausible, a plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

When evaluating a motion to dismiss, the Court must take the factual allegations contained in the complaint as true and construe them in the light most favorable to the plaintiffs. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). The Court is not, however, required to make unwarranted deductions of fact or accept conclusory allegations of law as true. *Id*. Where the allegations are merely "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," the plaintiff's claim will not survive a motion to dismiss under Rule 12(b)(6). *Twombly*, 550 U.S. at 555.

Complaints asserting claims under the False Claims Act must clear another, more onerous, hurdle as well: to survive a motion to dismiss, complaints alleging violations of the FCA must comply with Rule 9(b)'s heightened pleading standard for allegations of fraud. *U.S. ex rel. Clausen v. Lab. Corp. of Am. Inc.*, 290 F.3d 1301, 1309 (11th Cir. 2002). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this heightened pleading standard in a False Claims Act action, a relator must "allege 'facts as to time, place, and substance of the defendant's alleged fraud, particularly, 'the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

Here, Relators' Amended Complaint fails to satisfy these minimum pleading requirements and should be dismissed.

## ARGUMENT

I.  **The Amended Complaint Is A Shotgun Pleading That Inappropriately Lumps All Defendants Together As One And Should Be Dismissed In Its Entirety.**

Rule 9(b)'s particularity requirement "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting

defendants against spurious charges of immoral and fraudulent behavior." *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) (citation omitted); *see also Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). A relator is not permitted, in "shotgun fashion," to throw all allegations at every defendant without distinguishing between them, leaving defendants with the burden of determining what allegations relate to which defendant, and which claims. *See McInteer*, 470 F.3d at 1354 n.6. In other words, a pleading fails for lack of particularity when it "lumps together all defendants, failing to allege what conduct each defendant engaged in." *United States v. Choudhry*, No. 8:13-CV-2603, 2016 WL 7228760, at *3 (M.D. Fla. Oct. 11, 2016) (*citing Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007)).

Relators' First Amended Complaint runs afoul of these pleading requirements. Although Relators bring this action against nine separate defendants, their particular allegations against most of the named defendants are limited to only a few short paragraphs. For instance, the Bethany Benevolence Fund, Inc. is mentioned only twice in the Amended Complaint, once in Paragraph 5 (where Relators identify the Fund as a defendant and list its address) and again in Paragraph 8 (where they allege that some of the other defendants "are also officers of Bethany Benevolence Fund, Inc. which was founded in February 2009"). Nowhere in their Amended Complaint do Relators explain what the Fund is, how it is connected to the other defendants (including Bethany Hospice and Bethany Coastal Georgia), or what, if anything, the Fund did in connection with the matters alleged in the Amended Complaint.

Similarly, Relators' Amended Complaint names four individual physicians as defendants and bring charges of "immoral and fraudulent behavior" against them on the basis of scant factual allegations contained in only a few paragraphs. In a mere four paragraphs, Relators allege only that Dr. Richard Wheeler is "the Bethany Medical Director at the Valdosta location" (Am. Compl.

¶ 5), "an officer of Bethany Benevolence Fund, Inc." (Am. Compl. ¶ 8), and that he was present during an alleged February 2015 meeting during which an "illicit kickback scheme" was allegedly *discussed*. (Am. Compl. ¶ 24). Relators then declare in conclusory fashion that Dr. Wheeler "serves as the Medical Director for Bethany's Valdosta site," and "has a controlling interest in Bethany and receives annual dividends based on how many patients his site puts under census." (Am. Compl. ¶ 31.) Relators' allegations against Drs. Harrell, Sinclair, and Arnett are even sparser. They allege only that these physicians are Bethany Medical Directors (Am. Compl. ¶ 5), investors in "Bethany" that get "extra money from Bethany" by referring patients (Am. Compl. ¶ 29), and that they would provide individual information about "patients eligible for Medicare and Medicaid coverage." (Am. Compl. ¶ 51.) Nonetheless, Relators bring more claims against Drs. Harrell, Arnett, and Sinclair (four) than their names appear in Relators' entire pleading (three).

Instead of identifying particular allegations of fact sufficient to apprise each of the defendants of the basis for the claims against them, as required by Rule 9(b), Relators attempt to lump all defendants together as one and ask the Court to foist liability on each defendant for the alleged acts of the other defendants, whether or not they had any involvement in or knowledge of such acts. Indeed, throughout their Amended Complaint, Relators refer generally to alleged actions by "Bethany," apparently intending for that term to apply to all of the defendants collectively. (*See* Am. Compl. ¶ 5) (alleging, without factual support, that "Bethany Company Defendants and Bethany owner and operator Defendants ignore corporate formalities, intermingle assets, and have a unity of interest that causes the defendants to act as alter egos rather than separate entities").[3] It should go without saying that by lumping all defendants together as one under the

---

[3] Even the intended definition of "Bethany" is unclear. Inexplicably, an earlier sentence in Paragraph 5 of Relators' Amended Complaint appears to define the term to refer only to Dr. Wheeler and Mr. Mackey: "Defendant Richard E. Wheeler, M.D. is the Bethany Medical Director at the Valdosta location, and Defendant Berkley M. 'Mac' Mackey,

ill-defined "Bethany" umbrella, Relators' Amended Complaint fails to distinguish between the defendants or support the FCA claims against each of those defendants individually.  After all, Courts routinely dismiss False Claims Act complaints where relators refer to multiple defendants collectively, rather than base their claims on allegations of fact particular to each defendant individually.  *See, e.g. Choudhry*, 2016 WL 7228760, at *3 ("By referring to 'defendants' collectively, each count of the Second Amended Complaint fails to distinguish between the defendants and therefore fails to meet the particularity requirements of pleading a False Claims Act claim. . . ").  That is particularly true where, as here, Relators attempt to allege scienter, as required to support a False Claims Act claim, by making a sweeping allegation of knowledge as to all defendants collectively.  *U.S. ex rel. Se. Carpenters Reg'l Council v. Fulton Cty., Ga.*, No. 1:14-CV-4071, 2016 WL 4158392, at *11 (N.D. Ga. Aug. 5, 2016) (granting motion to dismiss FCA complaint where relators alleged "without any elaboration or differentiation among Defendants" that various defendants "made no efforts to ensure" compliance with applicable requirements; "[t]his is insufficient to meet the 'rigorous' requirement to plead scienter." (citation omitted))

Here, just like the relators in *Choudhry*, the Relators' Amended Complaint attempts to refer to all nine defendants collectively, and effectively make each defendant vicariously liable for the alleged acts of the other defendants.  And similarly, in support of their four causes of action under the FCA, rather than identify the particular facts alleged to support each element of their claims, Relators merely declare in conclusory fashion that "the Defendants" generally (and "by and through their agents, officers, and employees") have knowingly done something in violation of the

---

III is an investor and listed on the Secretary of State as the Chief Financial Officer (collectively referred to as 'Bethany')."

Act, "as set forth above." (*See* Am. Compl. ¶¶ 57, 63, 69.)  This too runs afoul of Rule 9(b) and warrants dismissal of Relators' Amended Complaint in its entirety.  *See Choudhry*, 2016 WL 7228760, at *3 ("And because the complaint, in shotgun fashion, incorporates all preceding allegations into each count and fails to distinguish between the fifteen defendants, it is impossible to determine what factual allegations relate to which defendant, including the submission of the alleged false billing statements").

## II.     Relators Fail To Plead A False Claims Act Presentment Claim With Particularity.

In their Amended Complaint, Relators' attempt to assert four claims against Bethany Coastal Georgia, Bethany Hospice, the Bethany Benevolence Fund, Ava Best, Mac Mackey, and Drs. Harrell, Arnett, Sinclair and Wheeler, under the Federal False Claims Act and Georgia False Medicaid Claims Act.  Relators first assert a "presentment" claim under section 3729(a)(1)(A) of the FCA and the GFMCA, which impose liability on any person who "knowingly presents, or causes to be presented," a "false or fraudulent claim for payment or approval."  31 U.S.C. § 3729(a)(1)(A); Ga. Code. Ann. §49-4-168.1(a)(1).[4]  To prevail on a presentment claim, Relators "must prove three elements:  (1) a false or fraudulent claim; (2) which was presented . . . by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false."  *U.S. ex rel. St. Joseph's Hosp., Inc. v. United Distributors, Inc.*, 918 F. Supp. 2d 1306, 1313 (S.D. Ga. 2013).

---

[4] All of Relators' claims under the FCA and GFMCA are based on the same allegations (*see* Am Compl. ¶¶ 56-77) and rely on statutory language that is largely identical. *Compare* 31 U.S.C. §§ 3729(a)(l)(A)-(B), 3729(a)(1)(G), and 3730(h) *with* Ga. Code. Ann. §§ 49-4-168.l(a)(l)-(2), 49-4-168.189(a)(7), and 49-4-168.4.  Because the applicable provisions of the FCA and GFMCA are nearly identical, courts in the Eleventh Circuit analyze claims under the GFMCA by looking to authority applying analogous provisions of the FCA.  *See, e.g., Cade* v. *Progressive Cmty. Healthcare, Inc.,* No. l:09-CV-3522, 2011 WL 2837648, at *3 (N.D. Ga. July 14, 2011) ("The language of the GFMCA is nearly identical to the FCA's language, so *Clausen's* reasoning applies and claims under the GFMCA also must satisfy Rule 9(b).")

The thrust of Relators' presentment claim—indeed, the thrust of this entire action—is their theory that "Bethany" (a term that, according to Relators' allegations, seemingly applies to any one of the defendants named in this suit—or all of them together) orchestrated a scheme to secure "illicit referrals" in exchange for kickbacks.  However, Relators' claims premised on "Bethany's" supposed kickback scheme fall far short of the particularity required under Rule 9(b) for two reasons.  First, Relators fail to allege the requisite "who, what, where, when, and how" of the purported kickback scheme, opting instead to simply declare repeatedly, and in conclusory fashion, that "illicit kickbacks" were paid by "Bethany."   Second, nowhere in Relators' Amended Complaint is there a single allegation of fact concerning the actual submission and payment of a false claim by the government—the central question in any FCA case.

### A.   Relator's Conclusory Allegations Concerning a Purported Kickback Scheme are Insufficient to Support Their Claims.

In their Amended Complaint, Relators attempt to bootstrap alleged violations of the Federal Anti-Kickback Statute by "Bethany" into civil claims under the False Claims Act, expressly stating that "the impetus for this FCA lawsuit is that Ms. Best and Mr. Mackey determined to grow and maintain their business through kickbacks."  (Am. Compl. ¶ 18.)  Relators' Amended Complaint fails, however, to allege specific facts demonstrating that illicit kickbacks were, in fact, paid.  Instead, the bulk of Relators' pleading is devoted to describing alleged conversations Relators had regarding investments in "Bethany" by referring physicians and their belief that those investments constituted illegal kickbacks.  Declaring something to be a kickback, even repeatedly (as Relators do here), is a far cry from pleading particular facts supporting that contention.

The federal Anti–Kickback Statute, 42 U.S.C. § 1320a-7b(b), prohibits a person from paying or receiving kickbacks to induce the referral of an individual for services paid under a federal health care program.  A violation of the Anti–Kickback Statute occurs when a defendant:

(1) knowingly and willfully, (2) offers or pays any remuneration, directly or indirectly, (3) to induce a person to refer individuals to the defendants for the furnishing of medical services, (4) paid for by Medicare.  *U.S. ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 F. Appx. 693, 698 (11th Cir. 2014).  FCA claims premised on a violation of the Anti-Kickback Statute are actionable under the False Claims Act when compliance with the Anti-Kickback Statute is a prerequisite for payment and a claim includes items or services *resulting from* a violation of the Anti–Kickback Statute.  *McNutt ex rel. U.S. v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259-60 (11th Cir. 2005)

As with any False Claims Act claim, however, an FCA claim premised on a violation of the Anti-Kickback Statute must be pled with particularity, and that requires specific details regarding the underlying kickback scheme to be pled as well.  Courts in the Eleventh Circuit have repeatedly dismissed FCA claims where relators have failed to allege sufficient facts supporting their allegations of an underlying kickback scheme.  *See, e.g. United States v. Choudhry*, No. 8:13-CV-2603, 2017 WL 2604930, at *5 (M.D. Fla. June 14, 2017) (dismissing FCA claim premised on alleged illicit kickback scheme where relator simply labeled "the defendants' financial arrangements as a 'kickback' without supporting details"); *Ga. ex rel. Hunter Labs., LLC v. Quest Diagnostics Inc.*, No. 1:13-CV-01838, 2014 WL 12543888, at * 4 (N.D. Ga. Mar. 17, 2014) (dismissing FCA claims where "complaint omits all detail as to *when* LabCorp allegedly offered inducements in the form of discounts, *what* the discounted rates were, and *to whom* the discounts were offered") (emphasis original); *U.S. ex rel. Osheroff v. Tenet Healthcare Corp.*, No. 09-22253, 2012 WL 2871264, at *8 (S.D. Fla. July 12, 2012) (dismissing complaint with "no allegations that any particular physicians were induced to alter their referral decisions" based on "financial relationship" with defendants); *see also Mastej*, 591 F. App'x. at 707 (dismissal was proper where

complaint "never pleaded any details as to the referred patients, or any specifics as to any" claims submissions)).

Here, Relators' Amended Complaint is devoid of factual allegations regarding these required details of the alleged financial relationship between "Bethany" and its referring physicians.  Far from describing the required "who, what, where, when, and how" of the alleged improper scheme, *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005), Relators merely describe conversations about the alleged financial relationships with physicians that Relators claim they had with Ms. Best, during which they allegedly accused Ms. Best and others of paying kickbacks, and then describe the nature of those purported kickbacks, generally.  The "details" of the purported scheme are summarized in Paragraphs 25 and 27 of the Relators' Amended Complaint:

> Bethany had compensation arrangements with numerous Medical Directors that gave rise to kickbacks.  Apart from Dr. Miller, these arrangements contained the following forms of payment:  (1) a monthly salary; (2) an annual dividend; and (3) monthly bonuses.  The doctors would receive payments as inducement for and appreciation for referrals of patients, which constitute kickbacks.  The payment of the salary is not done after a fair market value (FMV) analysis and is made to doctors for referrals rather than for the obligation of an appropriate amount of actual work for the hospice.  The schedule or interval of work (if any) is not written and not followed.   The complete compensation is not consistent with FMV or an arms-length transaction in large part because it takes the volume or value of referrals into account.  Bethany has more "Medical Directors" than is commercially reasonable for their census because they are actually paying for referrals.  For a period, while most hospices list their Medical Directors, Bethany did not.  Bethany knows they have too many Medical Directors and that they need to keep a low profile to avoid detection and ensure continued revenue streams.

(Am. Compl. ¶ 25.)

> Bethany cloaks some payments to Bethany's Medical Directors as investment interests.  Instead of providing these individuals with payments directly, Ms. Best first has them purchase an ownership stake in Bethany without obtaining a proper valuation and without assessing a commercially viable buy-in.  Once partial owners in Bethany, Ms. Best issues annual dividends to these individuals.  These amounts fluctuate according to how many patients are put under service at the Director's site

and are not proportional to the amount invested. The terms of the investment are related to the expected volume of referrals or the amount of business that could be generated by the investor. The "investors" are required to make referrals to Bethany and only those who are in a position to make referrals are considered or offered an investment opportunity. This is a sham transaction to hide the payment for referrals.

(Am. Compl. ¶ 27.)

Investment in a hospice or other healthcare provider by physicians, including referring physicians, does not automatically amount to an improper financial relationship under the Anti-Kickback Statute. *See* 42 C.F.R. § 1001.952(a) (identifying standards under which a "return on an investment interest, such as a dividend or interest income, made to an investor" will not constitute "remuneration" under the Anti-Kickback Statute). Nowhere in these paragraphs, or elsewhere in the Amended Complaint, do Relators provide any factual allegations supporting their assertion that any alleged investment in "Bethany" by unnamed Medical Directors constitutes a kickback. They allege no facts to substantiate their blanket assertion that the Medical Directors' ownership stake is purchased "without a proper valuation" and provide no support for the allegation that their compensation (whether in the form of a salary, dividend or bonuses) "is not consistent with FMV or an arms-length transaction in large part because it takes the volume or value of referrals into account." (Am. Compl. ¶¶ 25, 27.) Relators do not provide copies of any alleged agreements with these referring physicians (or even offer any details regarding such agreements). Nor do they identify the amount of compensation provided to these referring physicians, the number of referrals made by them, or any evidence to support their conclusory assertion that the amounts they received varied depending on the volume of such referrals. Instead, Relators simply assert repeatedly that Bethany paid kickbacks. (*See, e.g.,* Am. Compl. ¶ 18 ("Relators felt these were kickbacks, they violated the Anti-Kickback Statute (AKS), and were illegal"); ¶ 20 ("it got referrals by giving their Medical Directors kickbacks"); ¶ 21 ("Ms. Best and

Mr. Mackey decided to pay kickbacks"); ¶ 22 ("Ms. Best paid all the Medical Directors who owned shares in Bethany according to this same formula, and the payments varied depending on the volume of referrals")).

Relators' Amended Complaint lacks particular factual allegations creating a reasonable inference that "Bethany" violated the Anti-Kickback Statute, as they assert. Healthcare providers do not violate the Anti-Kickback Statute (and by extension, the False Claims Act) simply by having a financial relationship with a physician; Relators are "not permitted to simply label the defendants' financial arrangements as a 'kickback' without supporting details." *Choudhry*, 2017 WL 2604930 at *5. The Relators' presentment claim under the FCA and GFMCA fails for this reason alone.

### B.     Relators Failed to Allege the Submission of Any Particular Claim to the Government.

Relators' presentment claim under the False Claims Act fails for another, more fundamental reason as well: they allege no facts showing the actual *presentment of a claim* to the government. This, too, is fatal to Relators' claim.

It is well-established that the "central question" in a claim brought under the FCA's presentment section is "whether the defendant ever presented [or caused to be presented] a false or fraudulent claim to the government." *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1326 (11th Cir. 2009) (quoting *Clausen*, 290 F.3d at 1311). Indeed, the submission of a false claim "is the *sine qua non* of a False Claims Act violation." *Clausen*, 290 F.3d at 1311. "Because it is the submission of a fraudulent claim that gives rise to liability under the False Claims Act, that submission must be pleaded with particularity and not inferred from the circumstances." *Corsello*, 428 F.3d at 1013. That means that a complaint alleging a presentment claim, like Relators' Amended Complaint, must include the "who, what, where, when, and how of fraudulent

submissions to the government." *Id.* at 1014.  Rule 9(b)'s particularity requirement does not permit an FCA plaintiff "merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government."  *Clausen*, 290 F.3d at 1311.  But that is precisely what Relators try to do here.

As discussed above, the bulk of Relators' Amended Complaint consists of conclusory allegations concerning an alleged kickback scheme orchestrated by Ava Best and others at "Bethany."  Nowhere in their Amended Complaint, however, are there any factual allegations concerning the actual submission of false claims as result of the purported kickback scheme.  In fact, Relators do not even mention presentment to the government until the summary of their asserted causes of action in the final pages of the Amended Complaint, and, even there, they do nothing more than recite the bare elements of a presentment claim in conclusory fashion:  "As set forth above, Defendants, by and through their agents, officers, and employees, knowingly presented, or caused to be presented to the United States Government and the State of Georgia numerous false or fraudulent claims for payment or approval, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A) and/or the Georgia False Medicaid Claims Act O.C.G.A. § 49-4-168.1(a)(1)."  (Am. Compl. ¶ 57.)

This conclusory assertion is not supported by any "details concerning the dates of the claims, the content of the forms or bills submitted, their identification numbers, the amount of money charged to the government, the particular goods or services for which the government was billed, the individuals involved in the billing, and the length of time between the alleged fraudulent practices and the submission of claims based on those practices," as typically required to survive dismissal.  *U.S. ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x. 783, 797 (11th Cir. 2014).  *See also,*

*Mastej*, 591 F. App'x. at 707 (affirming dismissal of FCA claims based on Anti-Kickback Statute violations where complaint "does not specify a single claim for a single referred patient by a single one of the ten doctors and thus does not sufficiently allege any actual false claim."); *U.S. ex rel. Willis v. Southerncare, Inc.*, No. CV410-124, 2015 WL 5278413, at *2 (S.D. Ga. Sept. 9, 2015) ("[E]ven detailed portrayals of fraudulent schemes followed by conclusions that false claims must have been submitted is insufficient").  Although Relators try to claim, again in conclusory fashion, that Johnson and Helmly had "intimate knowledge of Bethany's billing protocols and operations" (Am. Compl. ¶ 49), they are unable to provide any specific details regarding the submission of false claims or otherwise plead the basis for that supposed "intimate knowledge" with particularity. That alone warrants dismissal.  *See U.S. ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1302 (11th Cir. 2010) ("Despite her assertion that she had direct knowledge of the defendants' billing and patient records, however, Sanchez failed to provide any specific details regarding either the dates on or the frequency with which the defendants submitted false claims, the amounts of those claims, or the patients whose treatment served as the basis for the claims. Without these or similar details, Sanchez's complaint lacks the "indicia of reliability" necessary under Rule 9(b) to support her conclusory allegations of wrongdoing."); *see also U.S. ex rel. Chase v. HPC Healthcare, Inc.*, 723 F. App'x 783, 790 (11th Cir. 2018) (affirming dismissal of FCA claims where complaint did not include specific examples of conduct relator described or allege with particularity basis for relator's claimed personal knowledge of billing practices).

And tellingly, Relators do not even identify which of the nine defendants that they have sued are alleged to have submitted false claims to the government, much less allege particular details regarding the manner and circumstances of each defendant's alleged submissions.  Instead, Relators simply assert that the "vast majority" of Bethany patients are Medicare and Medicaid

beneficiaries and, apparently, leave it to the Court to infer that false claims *must* have been submitted *by all Defendants*.  This, too, warrants dismissal of Relators' presentment claim.  The Court "cannot make assumptions about a False Claims Act defendant's submission of actual claims to the Government without stripping all meaning from Rule 9(b)'s requirement of specificity." *Clausen*, 290 F.3d at 1312 n.21.

For these reasons, Relators' first cause of action should be dismissed.

### III.    Relators Fail To Adequately Plead A "Make Or Use" Claim Under 31 U.S.C. § 3729(a)(1)(B) or section 49-4-168.1(a)(2) of the GFMCA.

Relators next try to assert a claim against the Defendants for violation of the False Claims Act's so-called "Make or Use provision," as well as an analogous claim under the GFMCA.  These provisions imposes liability on a defendant who "knowingly makes, uses, or causes to be made or used, a false record or statement" material to a false or fraudulent claim.  31 U.S.C. § 3729(a)(1)(B); Ga. Code Ann. §49-4-168.1(a)(2).  To allege a "Make or Use" claim, a relator must allege, *with particularity*:  "(1) that the defendant made a false record or statement and (2) that the defendant made [that] false record or statement for the purpose of getting a false or fraudulent claim paid or approved by the Government."  *U.S. ex rel. Saldivar v. Fresenius Medical Care Holdings, Inc.*, 972 F. Supp. 2d 1317 (N.D. Ga. 2013) (citing *Allison Engine Co., Inc. v. United States ex rel. Sanders*, 553 U.S. 662, 666 (2008)).

Here, Relators fail to allege any facts at all (much less with any particularity) supporting their assertion that any of the Defendants (or even the collective "Bethany") made any false record or statement, including for the purpose of getting a false claim paid by the government.  In fact, much like their "Presentment Claim" discussed above, the first that Relators mention an alleged "false record or statement" is in Paragraph 63 of the Amended Complaint, where they declare in conclusory fashion that "Defendants, by and through their agents, officers and employees,

knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim, in violation of" the False Claims Act and/or the Georgia False Medicaid Claims Act.  (Am. Compl. ¶ 63.)  In other words, far from pleading any specific facts demonstrating that any of the Defendants made *any* false statement or record, let alone one that they knew to be false and that was material to a false claim, Relators leave it to the Defendants— and the Court—to guess as to the basis for their "Make or Use" claim under the FCA and GFMCA. Once again, that is fatal to Relators' claim.  *See Mastej*, 591 F. App'x. at 711 (Dismissing claim where relator's complaint did "not allege with sufficient particularity that the Defendants made any false statement (much less one that was material to a false claim) thereafter").

For these reasons, the Court should dismiss Relators' second cause of action.

## IV. Relators' Have Not Alleged a Violation of The FCA or GFMCA's "Reverse False Claim" Provisions Either.

Relators' third cause of action alleges a violation of the False Claims Act's and GFMCA's "Reverse False Claim" provisions, 31 U.S.C. § 3729(a)(1)(G) and Ga. Code. Ann. § 49-4-168.189(a)(7).  But much like Relators' first two claims, this claim is based on nothing more than Relators' conclusory assertions of law, rather than actual factual allegations.  As a result, Relators' third claim should be dismissed for many of the same reasons discussed above.

The FCA's "Reverse False Claim" provision imposes liability on a person who "[k]nowingly makes, uses, or causes to be used, a false record . . . or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government."  31 U.S.C. § 3729(a)(1)(G).  The GFMCA similarly imposes liability on any person who "[k]nowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay, repay, or transmit money or property to the State of Georgia."  Ga. Code. Ann. § 49-4-168.189(a)(7).  Thus, to prevail on a claim under either

provision, a Relator must allege *with particularity* that the government was owed a "specific, legal obligation at the time that the alleged false record or statement was made, used or caused to be made or used." *U.S. ex rel. Potra v. Jacobson Cos.*, No. 1:12-CV-01600, 2014 WL 1275501, at 3 (N.D. Ga. Mar. 27, 2014) (dismissing FCA claims, including claim under Reverse False Claim provision); *U.S. ex rel. Mastej*, 869 F.Supp.2d 1336, 1346-47 (M.D. Fla. 2012) (dismissing claim where complaint "fails to allege any amounts owed to the government by the defendants").

Thus, Relators' third cause of action under the "Reverse False Claim" provision fails for the same reason their second claim under the "Make or Use" provision does: the Amended Complaint contains no factual allegations showing that any false record or statement was ever made by any of the Defendants. Even if it were sufficient under Rule 9(b) to allege in conclusory fashion that such false records or statements were made (it is not), Relators also have not alleged any facts supporting the assertion that the government was owed a "specific, legal obligation" at any time, much less at the time an alleged false record or statement was made.

Relators cannot satisfy the particularity requirements under Rule 9(b) and support their claim by simply parroting the elements of a cause of action under the FCA and GFMCA as they try to do here. Their third cause of action should therefore be dismissed.

### V. Relators Have Not Supported—And Cannot Support—A Retaliation Claim Against Defendants That Were Not Their Employer.

In their fourth and final cause of action, Relators attempt to assert a claim *against all Defendants* under section 3730(h) of the False Claims Act, and section §of the GFMCA, which provide relief to any employee that is "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action" under the FCA or GFMCA. 31 U.S.C. § 3730(h); Ga. Code Ann. § 49-4-168.4. In support of this claim, Relators allege that

"Defendants Bethany" violated their rights under the statutes' anti-retaliation provisions by terminating their employment in retaliation for lawful acts they allegedly took in an effort to stop violations of those laws.  To the extent Relators attempt, once again, to lump all defendants under the ill-defined "Bethany" moniker and bring an FCA retaliation claim against all defendants, whether or not they were actually Relators' employers, this claim must fail as well.

Indeed, it is well-established that only an employer is subject to liability under section 3730(h).  *U.S. ex rel. Parato v. Unadilla Health Care Ctr, Inc.*, 787 F.Supp.2d 1329, 1341(M.D. Ga. 2011).  Under the FCA, the word "employer" does not cover a supervisor or manager in her individual capacity.  *Id.*  Thus, the FCA does not impose individual liability for retaliatory discharge against a supervisor or manager, or any party other than a relator's actual employer.  *See, e.g., Lindsay v. Tech. Co. Sys. of Ga.*, No. 1:09-CV-2133, 2013 WL 591981, at *3 (N.D. Ga. Feb. 14, 2013); *U.S. ex rel. Friddle v. Taylor, Bean & Whitaker Mortg. Corp.*, No. 1:06-CV-3023, 2012 WL 1066510, at *5 (N.D. Ga. Mar. 27, 2012).

Here, Relators allege that they "began working for Bethany in December 2014," (Am. Compl. ¶¶6-7 ),without ever specifically identifying which particular Bethany entity (*i.e.,* Bethany Hospice, Bethany Coastal Georgia or Bethany Benevolence Fund, Inc.) was their employer.  In doing so, Relators have left the Court unable to determine, based on the allegations pled, which, if any, of the defendants named in this suit are even susceptible to a retaliation claim in the first place.  The retaliation claim should be dismissed for this reason alone.  Relators cannot survive dismissal of their retaliation claim by merely alleging, without any supporting evidence, that the various Bethany entities (and all other individual Defendants) are alter egos, as Relators try to do here.  *See U.S. ex rel. Schaengold v. Mem'l Health, Inc.*, No. 4:11-CV-58, 2014 WL 6908856, at *12 (S.D. Ga. Dec. 8, 2014) (granting motion to dismiss where government failed to support

assertion that parent and associated corporations were liable under FCA "under a veil piercing or alter ego theory").

Moreover, even if the Court is willing to assume, for the sake of this Motion to Dismiss, that any one of the Bethany entities could be an "employer" for purposes of Relators' retaliation claim, Relators still cannot support a retaliation claim against any of the individual defendants. Despite Relators' haphazard attempt to bring retaliation claims, in shotgun fashion, against Ava Best, Mac Mackey, and Drs. Harrell, Arnett, Sinclair, and Wheeler, their actual allegations make clear that those individual defendants were, at most, officers, owners, or other employees of "Bethany," rather than employers themselves.  (*See* Am. Compl. ¶5 (alleging that Best is "the President of Bethany," Arnett, Sinclair, and Wheeler are "Bethany Medical Directors," and Mackey "is an investor and listed on the Secretary of State [sic] as the Chief Financial Officer"); ¶ 8 ("Ava Best is the President and CEO of Bethany.  Ava Best, Mac Mackey, and Dr. Richard Wheeler are also officers of Bethany Benevolence Fund, Inc. . ."))  Because the FCA does not impose liability for retaliatory discharge against anyone other than an employer, Relators' retaliation claim against all individual defendants must fail for this reason too.

## CONCLUSION

For the reasons discussed above, Defendants respectfully request that the Court dismiss Relators' Amended Complaint, in its entirety, with prejudice.

ROBERTS TATE, LLC

*/s/ James L. Roberts, IV*
James L. Roberts, IV
Georgia Bar No. 608580
jroberts@robertstate.com
Theresa D. Beaton
State Bar No. 708198
tbeaton@robertstate.com
Post Office Box 21828

Saint Simons Island, Georgia 31522
(912) 638-5200
(912) 638-5300 - Fax
*Counsel for Defendants*

*Of Counsel:*
Bryan Nowicki (*pro hac vice pending*)
WI State Bar ID No. 1029857
bnowikci@reinhartlaw.com
Thomas M. Burnett (*pro hac vice pending*)
WI State Bar ID No. 1076010
tburnett@reinhartlaw.com
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 31st day of December, 2018, I electronically filed the foregoing

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** with the Clerk of Court

using the CM/ECF system which will send notification of such filing to the following attorneys of

record:

Mike Bothwell
The Bothwell Law Group, P.C.
304 Macy Drive
Roswell, Georgia 30076
mike@whistleblowerlaw.com

Respectfully submitted this 31st day of December, 2018.

ROBERTS TATE, LLC


/s/ JAMES L. ROBERTS, IV
_____
James L. Roberts, IV